IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| KASSIE DARGO (a/k/a KASSIE BANISTER), | ) ) ) ) | |
| | ) | Case No. 07 C 5026 |
| Plaintiff , | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| CLEAR CHANNEL COMMUNICATIONS, INCORPORATED, | ) ) | |
| | ) | |
| Defendant . | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kassie Dargo (a/k/a Kassie Banister) ("Dargo") brought suit against Defendant Clear Channel Communications, Incorporated ("Clear Channel") in the Circuit Court of Cook County alleging Promissory Estoppel, Intentional Misrepresentation, Negligent Misrepresentation, and Intentional Infliction of Emotional Distress. Clear Channel removed the case to this Court based on diversity jurisdiction. Clear Channel then moved to dismiss Dargo's Complaint.

## STATEMENT OF FACTS

At the time the incidents leading to this suit occurred, Dargo had worked as an on-air radio personality for eight years and was working in a sales position at WLUP-FM in Chicago, Illinois. Cmplt. at 5-6. Rob Morris, Program Director of radio station KDWB in Minneapolis, Minnesota ("Morris") contacted Dargo in March of 2007 and began to recruit her for a morning co-host position. *Id*. at 6.

Dargo and Morris engaged in extensive negotiations in March of 2007. *Id*. at 7. During the negotiations, Dargo told Morris that she would require an increase in compensation to induce her to leave Chicago. *Id*. at 8. Morris repeatedly promised Dargo that Clear Channel would provide her with a two-year employment contract. *Id*. at 9.

In April of 2007, Dargo and Clear Channel agreed upon a two-year contract with a base salary of $60,000 for her first year and a base salary of $63,000 for her second year with the opportunity to earn additional income through promotional appearances. *Id*. at 10. Morris sent an offer letter to Dargo via email on April 18, 2007. *Id*. at 11. Morris stated in that email that the agreed upon two-year employment contract would be forthcoming within a month. *Id.* at 12.

In reliance upon the promise of higher pay and a two-year contract, Dargo resigned her position at WLUP-FM and relocated from Chicago to Minneapolis where she signed a one-year lease for housing. *Id*. at 27. During her employment at KDWB, she received no negative performance feedback but rather was reassured that everything was going well. *Id*. at 15-16.

Dargo repeatedly inquired about the status of her two-year contract, and Morris repeatedly told her that the contract was being drafted and would be ready shortly. *Id*. at 17. Specifically, after becoming concerned by the fact that she still had not received her contract in June of 2007, Dargo spoke to Morris, who assured her that everything was going well and that the contract would be delivered in a day or two. *Id*. at 19.

However, Morris met with Dargo on June 19, 2007 and terminated her employment effective immediately. *Id*. at 20. At this time, she learned that Clear Channel never intended to enter into a two-year contract with her and that she actually never had a position at KDWB. *Id*. at 21, 32. Defendant actually wanted to audition Dargo for a potential position but knowing that she would

not agree to relocate without a guarantee of permanent employment, induced her with the promise of a two-year contract. *Id*. Morris and Clear Channel had no intention to provide such a contract. *Id*.

Since Dargo had no contacts in Minneapolis, she relocated to Chicago at her own expense. *Id*. at 24. Clear Channel informed trade publications that she was returning to Chicago for "personal reasons," knowing that this was false. *Id*. at 22. This damaged Dargo's reputation and caused her difficulty in finding a new job. *Id*. at 23.[1]

## STANDARD

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* at 1965.

---

[1] Clear channel submitted a copy of the offer letter Dargo alleged was sent to her via email and a related affidavit. The Court declines to consider these items in its decision.

# DISCUSSION

## Promissory Estoppel

In order to establish a claim of promissory estoppel under Illinois law, Dargo must show that 1) the defendant made an unambiguous promise to her; 2) she relied on that promise; 3) her reliance was expected and foreseeable; and 4) to her detriment. *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005) (*citing Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 1004 (Ill. 1990).

Under Illinois law, claims of promissory estoppel only succeed where all other elements of a contract exist but consideration is lacking. *Dumas*, 416 F.3d at 677 (*citing Bank of Marion*, 311 N.E.2d 138). Under such circumstances, promissory estoppel serves as a substitute for consideration. *Id*. It follows that there is no gap for promissory estoppel to fill when consideration exists. *Id*. (*citing All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1999)).

Here, Dargo pleads herself out of court by alleging facts establishing consideration for her claimed agreement with Clear Channel. Although simple relinquishment of a prior job is generally insufficient consideration, "being lured away from an existing job with the promise of permanent employment" is generally sufficient. *Kamboj v. Eli Lilly and Co.*, No. 05 C 4023, 2007 WL 178434, at * 8 (N.D.Ill. January 18, 2007) (*citing Davies v. Martel Lab. Serv., Inc.*, 545 N.E.2d 475, 477 (Ill.App.Ct. 1989). Notably, in *Kamboj*, the court found consideration where the plaintiff moved from Indianapolis to Chicago in order to accept a job offered by the defendant. *Id*. Quite similarly, Dargo asserts that in reliance on the promise of a two-year contract with Clear Channel, she resigned her position and relocated from Chicago to Minneapolis. Cmplt. at 27. This detriment is enough

to establish consideration and thus render promissory estoppel inapplicable.  Thus, Count I is dismissed with prejudice.[2]

**Intentional Misrepresentation**

Under Illinois law, Dargo can only allege fraud based on a false statement of a current and material fact.  *Associated Benefit Serv., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007).  Dargo alleges a promise of future conduct, and thus her action must be for promissory fraud. *Id*.

Promissory fraud is actionable in Illinois only "where the false promise or representation is the scheme or device to accomplish the fraud."  *Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992).  This applies where "a party makes a promise of performance, not intending to keep the promise but intending for another party to rely on it, and where the other party relies on it to its

---

[2] The Illinois Statute of Frauds applies to claims of promissory estoppel. *Id*.; *McInerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1352 (Ill. 1997) ("in the context of an employment relationship, reasonable reliance is insufficient to bar the application of the statute of frauds"). Under the statute of frauds, any agreement that will not be performed within one year from its making must be in writing and signed by the party charged with it.  740 ILCS 80/1.  *See also Dumas*, 416 F.3d at 677.

Here, Dargo bases her claim of promissory estoppel on Clear Channel's promise of a two-year employment contract.  Cmplt. at ¶ 26.  Neither party argues that such a contract falls outside the statute of frauds.

In order to meet the requirements of the Statute of Frauds, a writing must contain the agreement's essential terms. *Bower v. Jones*, 978 F.3d 1004, 1008 (7th Cir. 1992) (*citing Chapman v. Freeport Serv. Co.*, 529 N.E.2d 6, 10 (Ill.App. 1988); *see also*, *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 549 (7th Cir. 2005).  The only written and signed document that Dargo alleges exists here is an email forwarding an offer letter and stating that she will eventually receive a contract.  Cmplt. at Ex. A.  This document, suggesting only that Dargo will receive a contract, cannot be construed to contain the essential terms of that contract.  Indeed, it makes no mention of such terms.

However, the Statute of Frauds is an affirmative defense.  Here, notably, Dargo has not pleaded any facts which clearly indicate that no document memorializing the oral agreement existed. Indeed, she alleges that she was repeatedly told that a contract was being prepared.

detriment. *Id.* "In order to survive at the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent - a scheme or device," and "must allege that the defendant intended to induce the plaintiff to act for defendant's benefit." *Id*.; *Bensdorf & Johnson, Inc. v. N. Telecom Ltd.*, 58 F.Supp.2d 874, 881 (N.D.Ill. 1999).

Although exactly what constitutes actionable promissory fraud is somewhat unclear, courts have held that "promissory fraud is actionable only if it either is particularly egregious or is embedded in a larger pattern of deceptions that reasonably induces reliance and against which the law ought to provide a remedy." *J.H. Desnick, M.D. v. Am. Broadcasting Co., Inc.*, 44 F.3d 1345, 1354. One such circumstance is where a breach occurs so soon after the promise was made that a court can easily infer that the promisor never intended to keep the promise. *LeDonne v. AXA Equitable Life Ins. Co.*, 411 F.Supp.2d 957, 962 (N.D.Ill. 2006). Also, notably, a series of unfulfilled promises is better evidence of fraud than a single unfulfilled promise. *Speakers of Sport, Inc. V. Proserv, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999).

Here, Dargo alleges that Morris, on behalf of Clear Channel, contacted her, engaged in extensive contract negotiations with her, assured her that she was doing well in her new job, and repeatedly, sometimes in response to Dargo's inquiries, promised that he would produce a two-year employment contract for her. Dargo alleges that he never intended to produce a two-year contract. In addition, after Dargo was fired, he lied to publications regarding her reason for leaving. Morris's actions, if proven, could constitute a scheme to defraud. They are arguably "particularly egregious," and the repeated making of the promise, combined with the reassurances regarding performance and contract negotiations, alleges a "larger pattern of deceptions." Also notably, Dargo alleges that she

specifically asked about the whereabouts of her contract in early June 2007, was told that the contract would be delivered soon, and was fired soon thereafter on June 19, 2007.

As for the other elements of promissory fraud, Dargo alleges that Clear Channel intended her to rely on the promise and that she did rely on the promise to her detriment and Clear Channel's advantage. Specifically, Dargo alleges that she moved to Minneapolis in part in reliance on the offer of a two-year contract. This was to Clear Channel's benefit, as they were able to audition her for the morning co-host position, and to Dargo's detriment: she moved, was fired, was forced to move back to Chicago at her own expense, and is having difficulty finding another job. Thus, the Motion to Dismiss Count II is denied.

**Negligent Misrepresentation**

In order to state a cause of action for negligent misrepresentation, Dargo must allege facts establishing that Clear Channel owed her a duty to communicate accurate information. *Brogan v. Mitchell Int'l, Inc.*, 692 N.E.2d 276, 278 (Ill. 1998). Illinois recognizes a duty to communicate accurate information under only two circumstances: 1) when negligently conveying false information leads to physical injury to a person or property damage; and 2) when one is in the business of supplying information for the guidance of others in their business transactions. *Id.* Illinois does not recognize a duty to avoid misrepresentations that cause only emotional harm. *Id.*

Here, Dargo does not allege any physical injury or property damage, and Clear Channel is not in the business of providing information for the guidance of others in their business transactions. In addition, Illinois does not recognize a cause of action for negligent misrepresentation in the employment context. *Sino v. McDonald's Corp.*, No. 04 C 4161, 2007 WL 869553, at *14-15 (N.D.Ill. March 19, 2007) (no claim for negligent misrepresentation because employer did not have

a duty to communicate accurate information); *Schultz v. Sally Mae, Inc.*, No. 99 C 3613, 1999 WL 988772, at *3 (N.D.Ill. October 28, 1999) (*citing Brogan*, 692 N.E.2d at 279) ("Illinois courts do not recognize a cause of action for negligent misrepresentation in the employment context"); *Dougherty v. Akzo Nobel Salt Inc.*, 47 F.Supp.2d 989, 992 (N.D.Ill. 1999) (employer not liable for failing to communicate accurate information about impending terminations). Dargo cannot allege any facts that establish that Clear Channel, as her employer, owed her a duty to convey accurate information. Therefore, Clear Channel's Motion to Dismiss Count III is granted.

## Intentional Infliction of Emotional Distress

Dargo alleges that Clear Channel intentionally caused her emotional distress first by promising her a contract that it never intended on giving her and second by telling trade publications that she left her job for "personal reasons." Neither of these bases states a claim for intentional infliction of emotional distress ("IIED").

### Illinois Workers' Compensation Act Preemption

The exclusivity provision of the Illinois Workers' Compensation Act ("IWCA") bars employees from bringing claims against employers for accidental injuries. *Hunt-Golliday v. Metro. Water Reclamation Dist.*, 104 F.3d 1004, 1016 (7th Cir. 1997) (*citing* 820 ICLS 305/1 *et seq.*). There are four exceptions to this rule: 1) when the injury was not accidental; 2) when the injury did not arise from employment; 3) when the injury was not received during the course of employment; and 4) when the injury is not compensable under the act. *Hunt-Golliday*, 10 F.3d at 1016 (*citing Meerbrey v. Marshall Field and Co.*, 564 N.E.2d 1222, 1226 (Ill. 1990)). An injury intentionally inflicted on an employee by another employee is considered accidental on behalf of the employer if it was unexpected and unforeseen by the injured party. *Id.* However, the IWCA allows a cause

of action against an employer in these circumstances "for injuries that the employer or its alter ego intentionally inflict[ed] upon an employee or which were commanded or expressly authorized by the employer." *Id*. at 1016-17.

Neither of Dargo's bases for IIED are preempted by the IWCA.[3] Her first claim based on Morris's falsely promising her a two-year employment contract survives because Morris qualifies, at least at this stage of the litigation, as an alter ego of Clear Channel. An individual need not "at the top of the corporate pyramid" to qualify as an alter ego. *Alberts v. Wickes Lumber Co.*, No. 93 C 4357, 1995 WL 476654, at * 4 (N.D.Ill. August 9, 1995). Although supervisory status alone is insufficient to establish an employee as an alter ego, an employee qualifies as an alter ego if he or she has sufficient decisional and policy-making authority that he or she can speak for the company. *Arnold v. Janssen Pharmaceutica, Inc.* 215 F.Supp.2d 951, 957 (N.D.Ill. 2002).

Morris, who is program director for KDWB appears to have hiring and firing authority, qualifies at least at the motion to dismiss stage as a potential alter ego of Clear Channel. *Graves v. Man Group USA, Inc.*, 479 F.Supp.2d 850, 854 (N.D.Ill. 2007) (plaintiff's supervisors, one a human resources representative); *Watkins v. Woodlawn Cmty. Dev. Corp.*, No. 05 C 4051, 2006 WL 218163, at * 3 (N.D.Ill. January 25, 2006) (property manager who was Watkins's supervisor) *Arnold*, 215 F.Supp.2d at 957 (plaintiff's supervisors); *Wickes*, 1995 WL 476654, at * 5 (zone manager with authority over plaintiff).

---

[3] Clear Channel does not contest Dargo's assertion that her second basis for IIED, that Clear Channel told trade publications that Dargo left for "personal reasons," is an injury that falls outside of employment and thus falls under the second exception.

***Outrageous Conduct***

To state a cause of action for IIED under Illinois law, Dargo must allege: 1) extreme and outrageous conduct; 2) that the actor intended that his conduct cause severe emotional distress or at least was aware of a the high probability that his actions may cause severe emotional distress; and 3) that the actions actually caused severe emotional distress. *P. Breneisen, Jr. v. Motorola, Inc.*, 512 F.3d 972, 983 (7th Cir. 2007) (*citing Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)). "To qualify as outrageous . . . conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Id.* "Insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not qualify. *Id.* (*citing McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)).

**False Promise of a Two-Year Contract**

Dargo alleges that Clear Channel subjected her to IIED by repeatedly and intentionally telling her that it intended to enter into a two-year contract in order to induce her into auditioning for a job. Typical employment disputes generally do not rise to the level of outrageous conduct. *Oates v. Discovery Zone*, 116 F.3d 1161, 1174 (7th Cir. 1997). Illinois courts recognize that personality conflicts and questioning of job performance cause distress but are unavoidable in the employment context and not actionable as IIED. *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567-68 (7th Cir. 1997). Indeed, Illinois courts have limited recovery in the employment context "to cases in which the employer's conduct has been truly egregious, even denying recovery to plaintiffs subjected to a series of discriminatory acts." *Id.* at 568; *see also McKay v. Town & Country Cadillac*, 991 F.Supp. 966, 972 (N.D.Ill. 1997) ("courts consistently have held that . . . terminating

Plaintiff's employment in violation of federal anti-discrimination laws, is insufficient to support an IIED claim").

Morris's conduct, essentially enticing Dargo to move to Minneapolis to take a job and then firing her rather than giving her a promised contract, does not qualify as "outrageous." *See Maddie v. Siebel Sys., Inc.*, No. 04 C 3419, 2004 WL 2515827, at * 6 (N.D.Ill. November 5, 2004) ("while losing one's job and having to relocate to find new employment is stressful, it alone does not rise to the level of severe emotional harm"). Indeed, cases involving arguably more egregious circumstances have been dismissed. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (plaintiff, among other things, forced out of management position, promised a promotion she was never given, and had telephone calls monitored and her private vehicle vandalized); *Van Stan*, 125 F.3d at 569 (bipolar plaintiff called at home during his vacation and informed he was terminated for low productivity); *Maddie v. Siebel Sys., Inc.*, No. 04 C 3419, 2004 WL 2515827, at * 6 (N.D.Ill. November 5, 2004) (plaintiff's transfers blocked, screamed at, and unfairly terminated); *McKay*, 991 F.Supp. at 972 (employer verbally abused plaintiff, effectively lowered his pay, searched his records for personal phone calls, took away his demonstration vehicle, and terminated him); *compare Redman v. Gas City Ltd.*, No. 06 C 6405, 2007 WL 869561, at *3 (N.D.Ill. March 21, 2007) (plaintiff subjected to lewd sexually charged comments and insults regarding her age stated IIED claim); *Pommier v. James L. Edelstein Enter.*, 816 F.Supp. 476, 482-83 (N.D.Ill. 1993) (plaintiff subjected to threatening sexual advances stated IIED claim).

Defendant also made public statements that Dargo left KDWB for "personal reasons" after she was fired. This does not qualify as outrageous behavior. In fact, it could be perceived as less likely to cause emotional distress than if Morris told others that Dargo was fired. Courts have

dismissed claims of intentional infliction of emotional distress under similar but much more egregious circumstances. For example, the court in *McDowell v. J.B. Hunt Transp., Inc.* dismissed the plaintiff's claim where the defendant, who fired plaintiff, told other employers that he suspected the plaintiff of drug use. No. 03 C 6590, 2004 WL 1878334, at * 6 (N.D.Ill. August 10, 2004). Similarly, in *Socorro v. IMI Data Search, Inc.*, defendant, after firing plaintiff, told others that he lied on his employment application, was a convicted felon, and spent six months in jail. No. 02 C 8120, 2003 WL 1964269, at * 1, 5 (N.D.Ill. April 28, 2003).

For the reasons stated above, the Motion to Dismiss Counts I, III, and IV is granted with prejudice, and the Motion to Dismiss Count II is denied. Dargo may file an amended complaint within 21 days.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: May 28, 2008